ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

NATALYA VLADIMIROVNA VESELNITSKAYA,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - x

**18 CRIM 904**

SEALED INDICTMENT

18 Cr.

COUNT ONE
(Obstruction of Justice)

The Grand Jury charges:

Introduction

1. At all times relevant to this Indictment, NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, was a Russian national and attorney advising the defendants and claimants in *United States v. Prevezon Holdings, Ltd., et al.*, No. 13 Civ. 6326 (the "*Prevezon* Action"), a civil asset forfeiture and money laundering penalty action that was pending before the United States District Court in this District (the "U.S. District Court") from on or about September 10, 2013 to on or about March 8, 2018.

2. As set forth herein, NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, obstructed justice in the *Prevezon* Action through her submission to the U.S. District Court of an intentionally misleading declaration that, among other things,

represented the supposed investigative findings by the Russian Government related to the *Prevezon* Action as independently drafted. In truth and in fact, and as VESELNITSKAYA well knew but concealed from the Court, VESELNITSKAYA, a member of the defense team in the *Prevezon* Action, had participated in drafting those supposed independent investigative findings in secret cooperation with a senior Russian prosecutor. In so doing, VESELNITSKAYA obstructed the civil proceeding in the *Prevezon* Action then pending in this District.

<u>Background of Prevezon Action</u>

3. Through the *Prevezon* Action, the United States Government sought to recover several million dollars' worth of property, mainly New York real estate, on the ground that that this property was involved in laundering a portion of the proceeds of a Russian tax fraud scheme (the "Russian Treasury Fraud"). *See* Verified Complaint (the "Complaint") ¶ 2, *United States* v. *Prevezon Holdings, Ltd.*, 13 Civ. 6326 (filed Sept. 10, 2013) (ECF No. 1).

4. The Complaint alleged that the Russian Treasury Fraud was an elaborate tax refund fraud scheme in which a criminal organization including corrupt Russian government officials defrauded Russian taxpayers out of approximately 5.4 billion rubles, or over $200 million. Among other things, the

Complaint alleged that the Russian Treasury Fraud consisted of stealing the corporate identities of three companies held by a foreign investment fund advised by an investment company ("Investment Company-1"), manufacturing false contractual defaults against the stolen companies, and claiming tax refunds on the basis of those false corporate liabilities. Complaint ¶¶ 18-45.

5. The Complaint further alleged that persons associated with Investment Company-1 attempted to report the Russian Treasury Fraud to Russian authorities but were subject to retaliatory prosecutions by the Russian Government, Complaint ¶¶ 55-63; that the proceeds from the Russian Treasury Fraud were moved through an elaborate network of shell companies; and that approximately $1.96 million was ultimately transferred by shell companies to a real estate company ("Real Estate Company-1") which was a defendant and property claimant in the *Prevezon* Action, Complaint ¶¶ 75-102.

6. The asset forfeiture and civil penalty claims in the *Prevezon* Action were premised on the allegation that Real Estate Company-1 and associated entities committed money laundering, with the Russian Treasury Fraud constituting the principal predicate offense for money laundering. Complaint ¶¶ 119-53.

3

7. The *Prevezon* Action was contested by multiple defendants and property claimants, including Real Estate Company-1 and associated persons and entities (collectively the "*Prevezon* Action Defendants").

8. Counsel of record for the *Prevezon* Action Defendants were U.S. lawyers employed by several different U.S.-based law firms. NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, was retained to assist the *Prevezon* Action Defendants in the defense of the *Prevezon* Action.

### The MLAT Request and the Russian MLAT Response

9. On or about March 21, 2014, in connection with and for use in the *Prevezon* Action, the U.S. Government sent the Russian Government a request pursuant to a Mutual Legal Assistance Treaty (the "MLAT Request"). The MLAT Request sought, among other things, records regarding the commission of the Russian Treasury Fraud and Russian bank records showing the flow of the Russian Treasury Fraud's proceeds.

10. In or about late August 2014, the U.S. Government received a response to the MLAT Request from the Russian Government, which included a 14-page Russian language document from the Office of the Prosecutor General of the Russian Federation (the "Russian MLAT Response").

4

11. The Russian MLAT Response consisted of a number of supposed investigative findings purportedly from a Russian government investigation. These supposed findings purported to exonerate all Russian government personnel of the Russian Treasury Fraud, to exonerate Real Estate Company-1 of receiving proceeds of the Russian Treasury Fraud, and to accuse, among others, personnel associated with Investment Company-1 of committing the Russian Treasury Fraud.

12. Among the persons the Russian MLAT Response purported to accuse of committing the Russian Treasury Fraud was Sergei Magnitsky, a legal advisor for Investment Company-1, whom the U.S. Government alleged in the *Prevezon* Action had participated in reporting the Russian Treasury Fraud to Russian authorities but had been arrested in a retaliatory proceeding, Complaint ¶¶ 55-62.

13. Another person the Russian MLAT Response purported to accuse of committing the Russian Treasury Fraud was the CEO of Investment Company-1 ("CEO-1"). CEO-1 had participated in publicizing the Russian Treasury Fraud and in lobbying the U.S. Government to pass a law imposing sanctions on persons involved in the prosecution and custodial treatment of Magnitsky, and on persons involved in the Russian Treasury Fraud.

5

14. The Russian MLAT Response described its purported findings as a report by the Office of the Prosecutor General of the Russian Federation of "the results of the investigation carried out in its territory" and made various references to its supposed investigation. It did not contain any indication that any of its content was drafted by any non-Russian-government person, including, in particular, by NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, who was acting on behalf of the *Prevezon* Action Defendants.

15. The Russian MLAT Response described its purported investigative findings as reasons why the Russian Government was unwilling to provide the records requested in the MLAT Request.

16. On or about June 15, 2015, the U.S. Government produced a copy of the Russian MLAT Response to the *Prevezon* Action Defendants' U.S. counsel in the course of pretrial discovery. The Government had previously declined requests by the *Prevezon* Action Defendants' U.S. counsel for copies of the Russian MLAT Response in advance of formal discovery productions.

### The VESELNITSKAYA Declaration

17. On or about November 3, 2015, the U.S. Government moved for partial summary judgment in the *Prevezon* Action (the "Government Motion"), requesting a ruling that there was no

6

genuine dispute of material fact that the Russian Treasury Fraud occurred and constituted a predicate offense for money laundering.

19. On or about the night of November 17 and early morning of November 18, 2015, the *Prevezon* Action Defendants filed their papers in opposition to the Government Motion, including a memorandum of law and a declaration by NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant (the "VESELNITSKAYA Declaration"). In their memorandum of law, the *Prevezon* Action Defendants cited the VESELNITSKAYA Declaration for their claim that the Russian MLAT Response was exculpatory evidence that would provide a basis to deny the Government Motion. In particular, citing the Russian MLAT Response among other things, the *Prevezon* Action Defendants argued that the Russian Treasury Fraud was perpetrated not by corrupt Russian government officials as the U.S. Government had alleged, but by CEO-1 and other persons associated with Investment Company-1.

19. The VESELNITSKAYA Declaration, which was signed by NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, under penalty of perjury and dated November 17, 2015, attached a copy of the Russian MLAT Response. As set forth and quoted in paragraphs 27 and 28, below, the VESELNITSKAYA Declaration emphasized (a) that VESELNITSKAYA had gone to great lengths to

7

obtain a copy of the Russian MLAT Response through the Russian legal system, by filing a Russian court proceeding to obtain it after allegedly being rebuffed by the Russian Prosecutor General's Office, and (b) that the substance of the Russian MLAT Response was a persuasive reason to find the *Prevezon* Action without merit.

20. The VESELNITSKAYA Declaration did not disclose (a) that NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, in fact had access to drafts of the Russian MLAT Response provided by a representative of the Prosecutor General's Office, (b) that VESELNITSKAYA in fact participated in drafting and editing the Russian MLAT Response, or (c) that VESELNITSKAYA received assistance from the Prosecutor General's Office concerning the filing of a legal complaint against that very Office to obtain the Russian MLAT Response, which had the effect of making it appear outwardly that VESELNITSKAYA had been required to go through formal Russian channels to have any access to the Russian MLAT Response.

VESELNITSKAYA's Role in Drafting the Russian MLAT Response

21. In truth and in fact, NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, participated in the drafting of the Russian MLAT Response, and she did so during the time period when she acted as legal advisor to the *Prevezon* Action

8

Defendants. In particular, on July 31 and August 1, 2014, VESELNITSKAYA sent emails to the personal email account of a supervising Russian prosecutor in the Russian Prosecutor General's Office (the "Russian Prosecutor") attaching drafts of the Russian MLAT Response with numerous tracked changes and comments. In one of these emails, VESELNITSKAYA also copied the father of the owner of Real Estate Company-1.

22. Later on August 1, 2014, the Russian Prosecutor sent to VESELNITSKAYA a revised draft of the Russian MLAT Response that included, after its draft conclusion, a number of informal notes about additional insertions to make.

23. The tracked changes in the two drafts of the Russian MLAT Response sent by NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, to the Russian Prosecutor on July 31 and August 1, 2014, included, among other things, insertions of approximately 29 paragraphs describing the supposed actions of CEO-1, Magnitsky, and other persons associated with Investment Company-1 supposedly carrying out the Russian Treasury Fraud, and insertions of approximately two paragraphs describing the flow of funds through certain shell companies the U.S. Government had alleged sent fraud proceeds to Real Estate Company-1. A comparison of these insertions to the final Russian MLAT Response in fact sent by the Russian Government to

9

the U.S. Government reveals that many of the inserted claims sent by VESELNITSKAYA to the Russian Prosecutor were adopted, either essentially verbatim, in rephrased form, or with light edits.

24. Certain of the claims that were inserted in the drafts sent by VESELNITSKAYA — and that appeared in some form in the final Russian MLAT Response — were subsequently repeated in the *Prevezon* Action Defendants' papers opposing the Government Motion. These claims were offered in supposed support of the *Prevezon* Action Defendants' argument that persons associated with Investment Company-1, not corrupt Russian government officials, committed the Russian Treasury Fraud.

The Russian Prosecutor's Assistance to VESELNITSKAYA in Filing a Formal Complaint to Obtain the Russian MLAT Response

25. As set forth in paragraph 26, below, after the final Russian MLAT Response was completed, the Russian Prosecutor who had previously exchanged drafts of the Russian MLAT Response with NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, provided VESELNITSKAYA with assistance in creating the false impression that VESELNITSKAYA had not collaborated with the Russian Prosecutor to draft that very document, and assistance in obtaining an official copy of the Russian MLAT Response in a way that would not reveal her participation in the

10

drafting of the document. The Russian Prosecutor accomplished this by assisting VESELNITSKAYA in filing a formal complaint against the Prosecutor General's Office — the same office that employed the Russian Prosecutor — seeking access to the Russian MLAT Response.

26. Specifically, on or about June 2, 2015, the Russian Prosecutor, from a personal email account, sent to VESELNITSKAYA a Microsoft Word document which appeared to be a draft legal filing made in the name of NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, and addressed to the General Prosecutor of the Russian Federation. In the draft legal filing, VESELNITSKAYA stated that the Office of the Prosecutor General purportedly denied VESELNITSKAYA access to the MLAT Request and the Russian MLAT Response, and VESELNITSKAYA sought reconsideration of that denial.

The VESELNITSKAYA Declaration's Misleading Statements

27. In the VESELNITSKAYA Declaration filed with the U.S. District Court in the *Prevezon* Action, NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, described being forced, in order to obtain a copy of the Russian MLAT Response, to seek a Russian court order overturning the refusal by the Prosecutor General's Office to provide it, stating:

11

> "When the U.S. Government withheld the diplomatic exchange from Defendants, I filed a request with the Prosecutors Office of the Russian Federation which was denied. The Russian prosecutors attempted to withhold the correspondence on the grounds that the United States had represented that this case was criminal (a false representation) and asked them to keep their information secret. I have considered that action illegal, and challenged this action in court. The Russian court determined that the case is civil and ordered the prosecutor to release the correspondence, which confirms that the USAO misrepresented to the Russian Federation that this civil action is criminal."

In making these representations to the U.S. District Court, VESELNITSKAYA did not disclose that she had in fact participated in drafting the Russian MLAT Response in cooperation with the Russian Prosecutor, or that she had received assistance from the Russian Prosecutor in filing a complaint with the Prosecutor General's Office seeking the Russian MLAT Response.

12

28. In the VESELNITSKAYA Declaration filed with the Court in the *Prevezon* Action, NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, described the Russian MLAT Response as exculpatory evidence showing the *Prevezon* Action to be without merit, stating:

> "The Russian response to the United States request stated that the Russian crime alleged in the United States' complaint did not occur and that the story in the complaint was an attempt by [CEO-1] to 'discredit the law enforcement and judicial authorities of Russia investigating his criminal activities.' . . . . Even after receiving this diplomatic note, the Government continued to allege the same discredited facts. Only when Defendants conducted the investigation that the Government should have has the truth come out."

In making these representations to the U.S. District Court, VESELNITSKAYA did not disclose that she had in fact participated in drafting the Russian MLAT Response in cooperation with the Russian Prosecutor.

13

29. On or about November 30, 2015, the Court denied the Government Motion seeking partial summary judgment.

### The False Motion in Limine Statement

30. In addition to using the Russian MLAT Response as a basis for opposition to the U.S. Government's summary judgment motion, the *Prevezon* Action Defendants' U.S. counsel referred to the Russian MLAT Response in multiple subsequent filings with the U.S. District Court during the litigation of the *Prevezon* Action.

31. Among these references was a motion in limine filed on March 23, 2017, in which the *Prevezon* Action Defendants sought to bar the U.S. Government from using at trial evidence obtained through MLAT requests to other countries (which, unlike Russia, had provided the U.S. Government with requested evidence). In this motion in limine, the *Prevezon* Action Defendants characterized the Russian MLAT Response as "exculpatory" evidence and complained of the U.S. Government's refusal to produce that document in advance of formal discovery productions.

32. In responding to *Prevezon* Action Defendants' motion in limine, the U.S. Government advised the Court of circumstantial evidence it possessed suggesting that the *Prevezon* Action Defendants had had advance notice of the timing

14

of the Russian MLAT Response's transmission to the U.S. Government. The *Prevezon* Action Defendants protested any such claim, again citing to information furnished by NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant.

33. Specifically, the *Prevezon* Action Defendants' U.S. counsel filed a memorandum of law on or about April 21, 2017 (the "Motion in Limine Reply") stating, in part: "[T]he Government's complaint that Defendants 'apparently had notice of the precise timing of the Russian response to the Government's legal assistance request before the Government did,' is just wrong. . . . *The only information the Russian Federation had provided to Defendants was that an MLAT request had been made.*" (citation omitted, emphasis added), and in support of that statement they cited a letter sent from the Prosecutor General's Office to NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, on July 2, 2014 acknowledging receipt of the MLAT Request. A declaration submitted together with the Motion in Limine Reply included a copy of this letter and a translation.

34. In the immediate period leading up to the filing of the Motion in Limine Reply and the letter to VESELNITSKAYA, an email account used by VESELNITSKAYA exchanged numerous emails with the *Prevezon* Action Defendants' U.S. counsel who filed the Reply.

15

35. As NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, well knew, the statement, "The only information the Russian Federation had provided to Defendants was that an MLAT request had been made," was false. By the time the Russian MLAT Response was sent in August 2014, the Russian Prosecutor had provided VESELNITSKAYA with multiple drafts of the Russian MLAT Response and VESELNITSKAYA had participated in drafting the Russian MLAT Response.

36. The U.S. District Court denied the motion in limine.

37. The final exhibit list submitted by the *Prevezon* Action Defendants prior to trial listed the Russian MLAT Response as a defense trial exhibit upon which they intended to rely at trial.

38. Shortly before trial, the *Prevezon* Action settled.

## Statutory Allegations

39. On or about November 17, 2015, in the Southern District of New York and elsewhere, NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, did corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due administration of justice in the *Prevezon* Action, in the U.S. District Court for the Southern District of New York, to

16

wit, VESELNITSKAYA made to the Court a false and misleading declaration implying that she had not participated in drafting the Russian MLAT Response and that she had had no access to the Russian MLAT Response from the Russian Government other than pursuant to a court order, when in truth and in fact, and as VESELNITSKAYA well knew, VESELNITSKAYA had participated in drafting the Russian MLAT Response and had received assistance from a Russian prosecutor in obtaining access to both drafts and the final version of the Russian MLAT Response.

(Title 18, United States Code, Sections 1503(a) and 2.)

## FORFEITURE ALLEGATION

40. As a result of committing the offense alleged in Count One of this Indictment, NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offense alleged in Count One of this Indictment.

### Substitute Asset Provision

41. If any of the above-described forfeitable property, as a result of any act or omission of NATALYA VLADIMIROVNA VESELNITSKAYA, the defendant:

17

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
GEOFFREY S. BERMAN
UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

NATALYA VLADIMIROVNA VESELNITSKAYA,

Defendant.

INDICTMENT

18 Cr. _____

(Title 18, United States Code, Sections 1503(a) and 2.)

_/s/ Tracy Mitchell_

_____
GEOFFREY S. BERMAN
United States Attorney.

December 20, 2019
Filed Sealed Indictment.
U.S. M-J, Debra Freeman